## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HEATHER PEAVLER,

     Plaintiff,

v.                           CASE NO. 8:19-cv-283-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,[1]

     Defendant.

_____/

## O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits (Doc. 25).[2]  Because the Administrative Law Judge did not adequately evaluate mental impairment evidence from treating and examining sources which contradict the law judge's finding that the plaintiff's mental impairments were non-severe, the decision of the Commissioner of Social Security will be reversed and the matter remanded for further consideration.

---

[1]Andrew M. Saul became the Commissioner of Social Security on June 17, 2019 and should be substituted as the defendant.  See Fed. R. Civ. P. 25(d).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

I.

The plaintiff, who was forty years old at the time of the administrative decision (Tr. 50) and who has the equivalent of a high school education, has worked as a parcel deliverer for UPS (Tr. 235). She filed a claim for Social Security disability benefits, alleging that she became disabled on July 8, 2014 (Tr. 213) due to dizziness, memory blanking, seeing double, shaking, and anxiety (Tr. 234). The plaintiff's claim was denied initially and upon reconsideration (Tr. 92, 108).

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge (Tr. 45-78). The law judge found that the plaintiff has the following severe impairments: recurrent arrhythmias and vertigo (Tr. 24). The law judge found further that, although the plaintiff has medically determinable impairments of pseudodementia, depression, and anxiety, they do not cause more than a minimal limitation in the plaintiff's ability to perform basic mental work activities and, therefore, are non-severe (<u>id</u>.). He determined that the plaintiff (Tr. 27):

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), with additional limitations as follows: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, kneeling, crouching, and crawling; occasional work around

2

vibration, unprotected heights, and moving mechanical parts; occasional operation of a motor vehicle as part of the job duties performed; and tolerating up to a moderate noise level (e.g., typical office setting).

The law judge ruled that, with these limitations, the plaintiff "is capable of performing past relevant work as a mail carrier," as well as other jobs that exist in significant numbers in the national economy, including a bagger; laborer, stores; and floor waxer (Tr. 32-33). Consequently, the law judge concluded that the plaintiff was not disabled from July 8, 2014, through the date of the decision on March 27, 2018 (Tr. 34).

The plaintiff sought review of that decision from the Appeals Council (Tr. 210). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security (Tr. 1-5).

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results

3

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir.

4

1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied, and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff asserts two broad and interrelated challenges to the law judge's decision, both of which relate primarily to her mental impairments (Doc. 25, p. 3). The plaintiff first argues that the law judge failed properly to consider the opinions of Dr. Caroline A. McDonald, her treating psychiatrist, and Dr. Kyle Cieply, an examining psychologist, regarding the severity of her mental impairments (Doc. 25, p. 14).[3] Next, the plaintiff argues that, because the law judge failed properly to consider those opinions, substantial evidence does not support his residual functional

---

[3] Within this challenge, the plaintiff also asserts that the law judge had a duty to recontact Drs. McDonald and Cieply (Doc. 25, p. 19).

capacity determination and hypothetical question to the vocational expert (id., pp. 20–24).  The plaintiff's claims have merit and warrant remand.

The background for the plaintiff's mental impairments concerns a motor vehicle accident on July 7, 2014 (Tr. 59–60, 213).  The plaintiff states that she "blacked out" while driving a UPS truck and still has no memory of what happened (Tr. 59–60).  Records reflect that the police stopped the plaintiff for driving erratically after she hit another vehicle (Tr. 682–96).  The plaintiff was taken to the hospital where she presented with an altered mental state and was evaluated for dizziness and light-headedness with associated double vision (Tr. 744).  She underwent various tests, including a CT scan of her head, but no abnormalities were found (Tr. 744–56).  She was discharged with diagnoses of confusion and altered mental state-resolved (Tr. 749).

The plaintiff treated with Dr. McDonald on five occasions in 2017 (Tr. 917–32, 942–45).  Dr. McDonald noted the plaintiff's reports of low energy, anhedonia, depressed mood, impaired concentration, anxiety, uncontrolled worry, irritability, and restlessness (Tr. 917, 921, 925, 929, 942), and on a "review of systems" the psychiatrist documented that the plaintiff was positive for fatigue, dizziness, memory difficulty, insomnia,

6

nervousness, stress, and depressed mood (Tr. 918, 922, 926, 930, 943). On mental status exam, she found the plaintiff had a dysphoric mood, a restricted affect, limited recent and remote memory, and limited insight and judgment (Tr. 918, 922, 926, 930, 943). She also prescribed several medications for anxiety and depression (Tr. 917, 919–20, 924, 927–28, 931–32, 944–45), and referred the plaintiff for neuropsychological testing "due to extremely poor memory" (Tr. 944). Dr. McDonald opined that the plaintiff suffered from a generalized anxiety disorder, an unspecified neurocognitive disorder, major depressive disorder (recurrent episode, "moderate," with anxious distress, "moderate"), unspecified somatic symptom and related disorder, unspecified depressive disorder, insomnia disorder (persistent), and a skin picking disorder (Tr. 917, 921, 925, 929, 942).

The plaintiff underwent a neurocognitive evaluation in July 2017, at which time Dr. Cieply administered several standardized psychological and neuropsychological tests for "diagnostic clarification" (Tr. 933–41). Dr. Cieply reported that the cognitive measures of symptom validity were normal but the plaintiff's self-reports on psychological tests were a concern and involved "more cautious interpretation" (Tr. 936). In summarizing the results of the self-reporting measures, he opined that the

7

plaintiff was "somewhat overwhelmed, indicating severe impairment with her overall level of independent functioning" (Tr. 940). He reported that, emotionally, the plaintiff "indicates a moderate amount of current signs of depression and anxiety. She is at risk for significant social difficulties. At worst, symptoms could include peculiarities in thinking or experience" (id.). Dr. Cieply explained his clinical impressions, stating that "there is significant evidence of depression and anxiety which could accentuate cognitive weaknesses, while increasing [the plaintiff's] awareness of functional deficits" (id.). Dr. Cieply assessed a full-scale IQ score of 73 (Tr. 936), and he diagnosed major depressive disorder (recurrent, "moderate"), unspecified anxiety disorder, somatic symptom disorder, and "mild" vascular neurocognitive disorder without behavioral disturbance (Tr. 941).[4]

Against this backdrop, the plaintiff argues, meritoriously, that the law judge did not adequately consider Dr. McDonald's opinion, as well the opinions of the examining psychologist and other treating physicians, when determining the nature and severity of her mental impairments. In particular, the law judge did not explain why these opinions do not compel

---

[4] Dr. McDonald disagreed with Dr. Cieply's diagnosis of vascular neurocognitive disorder (Tr. 923).

8

a finding of a severe mental impairment.[5]

The opinions of treating physicians are entitled to substantial or considerable weight absent a showing of good cause.   Schink v. Commissioner of Social Security, 935 F.3d 1245, 1259 (11th Cir. 2019), quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).   Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.   Id., citing Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011); Phillips v. Barnhart, supra, 357 F.3d at 1240–41. Moreover, the law judge "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."   Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge did not analyze or state the weight given to Dr. McDonald's opinion.   As set forth above, Dr. McDonald's opinion is reflected most significantly in her findings that the plaintiff has fatigue,

---

[5] The term "severe impairment," as used in the regulations, is something of a misnomer.  As the court of appeals has explained, "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

dizziness, memory difficulty, insomnia, nervousness, stress, a depressed and dysphoric mood, a restricted affect, limited recent and remote memory, and limited insight and judgment, and that the plaintiff suffers from a major depressive disorder that is "moderate" in severity, with anxious distress that is "moderate" in severity (Tr. 918, 922, 926, 930, 943). Inexplicably, the law judge did not even mention these findings or acknowledge her diagnosis of "major depressive disorder, recurrent episode, 'moderate,' with anxious distress, 'moderate'" (compare Tr. 25 with Tr. 917–32, 942–45). Importantly, the law judge is required to state with particularity the weight he gives to medical opinions and the reasons for that weight. Winschel v. Commissioner of Social Security, supra, 631 F.3d at 1179; Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987); Dempsey v. Commissioner of Social Security, 454 Fed. Appx. 729, 732 (11th Cir. 2011). The Eleventh Circuit explained:

> What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Unless the [law judge] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence

> approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether
> the conclusions reached are rational.

Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quotations and citations omitted); see also Lewis v. Callahan, supra, 125 F.3d at 1440 (The law judge must specify his reasons for giving no weight to the opinion of a treating physician and the failure to do so is reversible error.).

Although the law judge briefly acknowledged Dr. McDonald's treatment of the plaintiff (Tr. 25), he obviously rejected her opinion because he did not find that the plaintiff suffered from a severe mental impairment, or even that the plaintiff's unspecified neurocognitive disorder, unspecified somatic symptom and related disorder, or insomnia disorder were medically determinable impairments. The law judge, however, did not expressly state he was rejecting Dr. McDonald's opinion, much less explain why he rejected her opinion. His failure to do so is reversible error. See Lewis v. Callahan, supra, 125 F.3d at 1440.

The Commissioner asserts that the law judge cited findings from Dr. Cieply that contradicted Dr. McDonald's treatment notes (Doc. 26, p. 7). That assertion is baseless. Dr. Cieply's findings and diagnoses are consistent with Dr. McDonald's opinion. For example, Dr. Cieply opined

11

that there was "significant evidence of depression and anxiety" (Tr. 940), he assessed borderline intellectual functioning, and his diagnoses parallel Dr. McDonald's diagnoses. Indeed, Dr. Cieply's opinions on the plaintiff's possible mental difficulties and limitations directly contradict the law judge's finding that the plaintiff's mental impairments were non-severe. The law judge addresses none of the consistencies between Dr. McDonald's opinions and Dr. Cieply's opinions. Rather, the law judge merely recites large portions of Dr. Cieply's report that pertain to the plaintiff's test results on psychological measures (Tr. 25–26). The law judge specifically recounts Dr. Cieply's statement that the plaintiff's self-reporting on psychological testing "might require a more cautious interpretation ... given some idiosyncratic" responses and "subtle suggestions of over-reporting of symptoms providing a negative or pathological view" (Tr. 25). The law judge, however, ignores that Dr. Cieply did not find that the plaintiff's reports were not credible or that she was malingering.

Further, while the law judge recognized that both Dr. Cieply and Dr. McDonald diagnosed the plaintiff with a somatic symptom disorder (Tr. 25–26), he overlooked the import of that impairment. Notably, the American Psychiatric Association explains that a "somatic symptom

12

disorder involves a person having a significant focus on physical symptoms, … that results in major distress and/or problems functioning[;]" and that people with this disorder are not faking their illnesses. APA, Somatic Symptom Disorder, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder (last visited June 26, 2020).

Moreover, to the extent the law judge discounted Dr. McDonald's opinion because the plaintiff did not seek treatment with her until several months before the administrative hearing (although he did not expressly give this as a reason for discounting her opinion (see Tr. 28, 30)) that basis is unpersuasive. It is not uncommon for people with mental impairments to fail to recognize the need for assistance from mental health specialists. In this case, the plaintiff testified that she started seeing Dr. McDonald because her mother-in-law thought that the plaintiff "might need help" (Tr. 55–56). People with somatic symptom disorder "typically go to a primary care provider rather than psychiatrist or other mental health professional" (APA, Somatic Symptom Disorder, supra).

The Commissioner attempts to avoid the law judge's failure to fully and fairly address Dr. McDonald's opinion by claiming that Dr.

13

McDonald's "diagnoses and vague notations" are not medical opinions (Doc. 26, pp. 7–8). However, the appellate court has flatly rejected that claim. See Winschel v. Commissioner of Social Security, supra, 631 F.3d at 1179 (rejecting the Commissioner's argument that a treating doctor's treatment notes that included a description of the plaintiff's symptoms, a diagnosis, and a judgment about the severity of the plaintiff's impairments did not constitute a medical opinion as defined by 20 C.F.R. § 404.1527(a)(2)).

The Commissioner also urges, unpersuasively, that any error by the law judge in this regard is harmless because Dr. McDonald's "opinions" (and those of the other psychologists and treating doctors mentioned by the plaintiff) are not inconsistent with the law judge's decision (Doc. 26, pp. 8–11). Dr. McDonald's opinion on the severity of the plaintiff's mental impairments is entirely inconsistent with the law judge's finding that the plaintiff does not have a severe mental impairment. And, Dr. McDonald's opinion is consistent with the opinions of the examining psychologists and the plaintiff's treating physicians. In particular, Dr. Nekeshia Hammond, who conducted a consultative examination at the request of the Social Security Administration, found that the plaintiff's short-term memory was "poor"

14

and that she "needs assistance finding employment that accommodates her … mental health limitations" (Tr. 600–01)  This opinion indicates that the plaintiff has mental functional limitations that need to be accommodated in order for the plaintiff to perform work.  However, the law judge did not include any such accommodation in the plaintiff's residual functional capacity.

Finally, because the law judge did not adequately explain his rejection of Dr. McDonald's opinion, he was not at liberty to rely on the opinions of the non-examining psychologists. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Security, 503 Fed. Appx. 892, 893 (11th Cir. 2013); Forrester v. Commissioner of Social Security, supra, 455 Fed. Appx. at 902–03; Oldham v. Schweiker, 660 F.2d 1078, 1086 (5th Cir. 1981).  Here, the only opinion evidence the law judge weighed was that from the state agency consultants.  The law judge gave "great weight" to the opinions of the state agency reviewing psychologists (Tr. 31), who reviewed the plaintiff's claim file in 2015 and opined that the plaintiff suffered from only mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 85–87, 101–03).  The law judge reasoned that these opinions

15

were "well supported by the evidence of record, and uncontroverted by any other medical source statement" (Tr. 31). That statement is clearly incorrect as shown by the foregoing discussion.

For the reasons stated above, it is appropriate to remand this matter for further proceedings. See Dempsey v. Commissioner of Social Security, supra, 454 Fed. Appx. at 732 ("when the ALJ fails to state with sufficient clarity the grounds for his evidentiary decisions, we will not affirm simply because some rationale might have supported the ALJ's conclusion, and instead remand for further findings at the administrative hearing level").

As indicated, the plaintiff's second argument is interrelated with the first. Consequently, if, as has been shown, the law judge erred in reaching his conclusion that the plaintiff has only non-severe mental impairments by not properly evaluating the opinion of Dr. McDonald, as well as the opinion of Dr. Cieply, the determination of the plaintiff's residual functional capacity and the hypothetical questions to the vocational expert are rendered questionable. Thus, if the plaintiff had a severe mental impairment because she had at least a moderate mental functional limitation, the residual functional capacity and the hypothetical questions would have to include that limitation. See, e.g., Winschel v. Commissioner of Social

16

Security, supra, 631 F.3d at 1181.  Under these circumstances, the second issue will be pretermitted.

It is, therefore, upon consideration,

**ORDERED**:

That the decision of the Commissioner is hereby **REVERSED** and the matter **REMANDED** for further proceedings.  The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _____ day of August, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

17